U.S. DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

```
_____
LUCIA MABEL GONZALEZ PAREDES   )
                               )
            Plaintiff          )
                               )
v.                             )    Case No. 1:06CV00089
                               )    Judge: Paul L. Friedman
JOSE LUIS VILA and MONICA NIELSEN )
                               )
            Defendants         )
_____)
```

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OPPOSITION TO**

**MOTION TO QUASH SERVICE OF PROCESS AND DISMISS COMPLAINT**

Defendants Jose Luis Vila and Monica Nielsen, through undersigned counsel, and without accepting the jurisdiction of the Court in this action through this filing, hereby respond to Plaintiff's Opposition to our Motion to Quash Service and Dismiss Complaint as follows:

1. <u>Defendants are entitled to diplomatic immunity in the United States pursuant to their status as diplomatic agent (or immediate family) duly accredited by the United States.</u>

Plaintiff bases her opposition to Defendants' pending motion in part by asserting Defendants have failed to present evidence they are entitled to diplomatic immunity.

1

In response, Defendants enclose with this Response a copy of the Department of State's official accreditation acknowledging and recognizing Mr. Vila as a diplomatic agent of the Republic of Argentina, and his spouse, Ms. Nielsen, as a member of Mr. Vila's immediate family, since 2003. (See Exhibit A). This formal accreditation by the U.S. Department of State establishes the diplomatic status of these two persons in the United States pursuant to the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T 3227, T.I.A.S. No. 7502. See also , e.g., In re Baiz, 135 U.S. 403 (1890), which held that "the certificate of the Secretary of State … is the best evidence to prove the diplomatic character of a person accredited as a minister by the government of the United States."

According to these documents, Defendants had diplomatic immunity throughout the entire period of Ms. Gonzalez's contract.

2.   The Republic of Argentina has exercised its right to diplomatic immunity over Defendants.

In addition, Defendants enclose a copy of the formal diplomatic note sent by the Republic of Argentina to the U.S. Department of State informing the United States that it has exercised its right of diplomatic immunity with regard to the Defendants in this civil matter. (See Exhibit B).

As a matter of law, both sets of documents presented in Exhibits A and B herein are sufficient evidence establishing Defendants' diplomatic status, as well as the assertion of diplomatic immunity by the Republic of Argentina with regard to this claim.

3.      <u>Defendants are entitled to immunity from Plaintiff's contract claims because no professional or commercial activity has been exercised by Defendants in the United States outside Mr. Vila's official functions and therefore no contract could be related to such nonexistent activity</u>.

Plaintiff has also failed to demonstrate that Mr. Vila, Plaintiff's employer, engaged in any professional or commercial activities aside from his official diplomatic functions while in the United States.  Plaintiff's employment contract had no relation or connection with a professional or commercial activity performed by Defendants.

As to Plaintiff's insistence that her employment contract constituted "commercial activity" by Mr. Vila, Defendants rely on the doctrine set forth in <u>Tabion v. Mufti</u>, 73 F.3d 535 (4th Cir. 1996).  As the Fourth Circuit concluded in <u>Tabion</u>, supra:

> "…Looking solely at the words "commercial" and "activity," then, the phrase "commercial activity" could logically encompass the Muftis' dealings with Tabion. But such a literal manner of interpretation is superficial and incomplete, and, we believe, yields an incorrect rendering of the meaning of "commercial activity" as used in the Vienna Convention. When examined in context, the term "commercial activity" does not have so broad a meaning as to include occasional service contracts as Tabion contends, but rather relates only to trade or business activity engaged in for personal profit. Accepting the broader meaning fails to take into account the treaty's background and negotiating history, as well as its subsequent interpretation. It also ignores the relevance of the remainder of the phrase--"outside his official functions." "

Moreover,

> "…the phrase 'commercial activity', as it appears in the Article 31(1) exception, was intended by the signatories to mean 'commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.'  Day-to-day living services such as dry cleaning or domestic help were not meant to be treated as outside a diplomat's official functions.  Because these services are incidental to daily life, diplomats are to be immune from disputes arising out of them."

3

(See also the "Statement of Interest of the United States" and its Conclusion, submitted by the U.S. Department of State in the <u>Tabion</u> proceedings, included here as Exhibit C).

As to Plaintiff's reliance on <u>Park v. Shin</u>, 313 F.3d 1138 (9th Cir. 2002), it is inapplicable here, since it involved matters with regard to <u>consular</u> immunities under the Vienna Convention on Consular Relations of 1963, not <u>diplomatic</u> immunities under the Vienna Convention on Diplomatic Relations of 1961.

As stated by the court in <u>Park</u>,

> "[T]hat case [<u>Tabion v. Mufti</u>] is distinguishable because it dealt with the Vienna Convention on Diplomatic Relations, a treaty providing almost complete immunity to diplomats. Further, the <u>Tabion</u> court was concerned with whether the act of hiring a domestic servant constituted commercial activity practiced for personal profit, something prohibited by the treaty at issue."

Plaintiff's allegations confuse diplomatic and consular immunities, and also require additional clarifications under the Foreign Sovereign Immunities Act (FSIA) as well.

Although consular and diplomatic immunities are granted based on the particular functions of the respective agents, the grant of consular immunities is different and more limited than the grant to a diplomatic agent, especially in relation to the applicable exceptions.

Article 31.1 (c) of the Vienna Convention on Diplomatic Relations (VCDR), which grants ***diplomatic immunity*** states that a diplomatic agent shall have immunity except in the case of:

> "[a]n action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his ***official functions***."

On the other hand, Article 43 of the Vienna Convention on Consular Relations which grants consular immunity states that"

> 1. Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions.
>
> 2. The provisions of paragraph 1 of this Article shall not, however, apply in respect of a civil action either:
>
> a) arising out of a contract concluded by a *consular officer or a consular employee in which he did not contract expressly or impliedly as an agent of the sending State…"*

Whereas the exception to immunity of jurisdiction of the Vienna Convention on Diplomatic Relations of 1961 is applicable when the commercial or professional activity is exercised outside of the diplomatic agent's "official function," the VCCR of 1963 only grants immunity if the consular agent was exercising "consular functions."  The terms "official function" versus "consular function" are not synonymous and do not have the same application because they correspond to two different international treaties with different legal bases and they are related to two separate and distinct functions

Moreover, the term "official functions" as used in the commercial exception in article 31.1 (c) VCDR is much broader in scope than the term "diplomatic functions" used in article 3.1 of the same treaty, because they also extend not only to the diplomatic agent but also to his family, and are linked to the function of promoting the culture and way of life of the represented State in the every day interaction with members of the community of the receiving State.

Plaintiff claims that her contract with Mr. Vila should be considered "Commercial Activity" under the Foreign Sovereign Immunities Act. The FSIA is not a treaty, but rather, a law adopted by Congress in 1976 (see 28 USC §1330, Actions against foreign states, and Jurisdictional Immunities of Foreign States, §1602 to §1611) containing the rules that govern the sovereign immunity of foreign states in this country.

The term "commercial activity" as used in the FSIA is not the same as the term used in the VCDR 1961. The Court in <u>Tabion v. Mufti</u> expressly rejected the application of the FSIA as an interpretive guide for the Vienna Convention. This is also the view expressed by the U.S. Department of State in its "Statement of Interest" (Exhibit C).

Plaintiff was hired by Mr. Vila in April, 2004 as a live-in domestic to perform "domestic functions such as cooking, cleaning, washing, ironing and any other work inherent to the functions designated by the employer." The employment contract executed was between Mr. Vila and Plaintiff. Mr. Vila hired Plaintiff to free him to perform his official functions at the Embassy of Argentina.

It is not true that the reason for Plaintiff's employment was to allow Ms. Nielsen to further her "professional career" as a lawyer while in the United States. Academic studies can neither be considered as exercising a "professional activity" nor a "commercial activity."

Ms. Nielsen, who already has a law degree from Argentina, has never worked nor been otherwise employed since she arrived in the U.S. in 2003. Furthermore, her diplomatic status as the wife of Mr. Vila while residing in the United States does not deprive her of the right to pursue any course of academic studies she chooses during her stay, nor is her immunity affected thereby. Ms. Nielsen took law courses toward an

6

LL.M. degree (which Ms. Nielsen does not require to practice her profession or further her professional career) at George Washington University on two occasions: during the fall of 2003, <u>prior</u> to Plaintiff's employment in 2004 and the birth of Ms. Nielsen's daughter, and from August 30, 2004 to December 2, 2004 (7 hours of class per week during a 3-month period).

Plaintiff alleges in her complaint, at Par. 8, that she was informed "that one of the reasons she was being hired was to care for Defendant's infant daughter… because Ms. Nielsen wanted to continue pursuing her legal education in the U.S." Plaintiff was never told that Ms. Nielsen's legal studies were a reason for her employment, and the employment contract she signed does not cite child-care as part of her duties. Plaintiff told Defendants when she was hired that she had no child-care experience, and Defendants did not request Plaintiff to perform such duties. Defendants have only one child, a daughter (born in April, 2004, in Buenos Aires), who was severely ill and had undergone very delicate brain surgery and had been frequently hospitalized during the first 6 months of her infancy. As a result of this prolonged illness, Defendants took care of their daughter at all times with the assistance of health professionals who came to their residence (these costs were either fully paid for or reimbursed to Mr. Vila by the Argentine Ministry of Foreign Affairs). Plaintiff was never enlisted to assist the Defendants with the physical or medical care of their daughter.

4. <u>Plaintiff's mere allegation of contractual misrepresentation and deceit by Defendants is not true, lacks evidence and is not related to any exception barring the exercise of diplomatic immunity under the Vienna Convention on Diplomatic Relations of 1961</u>.

Plaintiff ends her Opposition by claiming misrepresentation and deceit by Defendants because they allegedly entered the United States under the false representation to the United States that they intended to honor the employment contract when they actually intended the contrary.

Plaintiff not only fails to provide any evidence in support of this claim, other than to cite allegations in the Complaint, but more important, fails to cite any exception under the Vienna Convention which would defeat the exercise of diplomatic immunity under such grounds.

Plaintiff forgets that Defendants entered the United States under diplomatic status in May, 2003, almost one year prior to Plaintiff's employment.

Plaintiff cites a United States Department of State Circular Diplomatic Note of May 20, 1996 (available at http://www.state.gov/documents/organization/6835.doc) to the effect that the Department of State is concerned about problems which arise from time to time regarding the personal household employees of diplomats, and that *redress may be available under federal or local laws.*  This Note, however, does not change the terms of diplomatic immunity under the Vienna Convention, or the ruling in Tabion.  The Note recommends written employment contracts that reflect U.S. legal requirements, all of which were duly observed by Defendants.  Indeed, when Plaintiff abandoned her employment abruptly, appropriate notice was also sent to the U.S. Department of State accompanied by her final wages and a return plane ticket to Argentina.  In this regard, it is important to also note another concern expressed by the U.S. Department of State in that 1996 Note:

> "The Department also wishes to express its concern about persons entering the United States as personal household employees of members of diplomatic

8

missions and consular posts, who leave such employment after a short time and remain in the country illegally. It is clear that some of these persons undertake employment solely as a means to enter the United States and have no bona fide intention to work as personal household employees after they are here. The Department is concerned that such actions by personal household employees not only constitute abuses of their visa status, but also subvert the intentions of their diplomatic or consular employers for a good faith employment relationship."

For all the above stated reasons, the Court should proceed to grant Defendant's pending motion.

Respectfully submitted,

_____     October 10, 2006
Michael E. Veve, PLLC
D.C. Bar No. 222679
Lasa, Monroig & Veve, LLP
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
Tel.: (202) 261-3524
Fax: (202) 261-3523

Counsel for Defendants

Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing was mailed first class, postage prepaid, this 10th day of October, 2006 to:

       Thomas F. Connell, Esquire
       Wilmer Cutler Pickering Hale and Dorr LLP
       1875 Pennsylvania Avenue, N.W.
       Washington, D.C. 20006

Muneer I. Ahmad, Esquire
International Human Rights Law Clinic
American University Washington College of Law
4801 Massachusetts Avenue, N.W.
Suite 417
Washington, D.C. 20016

*Michael E. Veve*

_____
Michael E. Veve, PLLC