

EMBAJADA ARGENTINA
WASHINGTON, D.C.

ENTRÓ OCT 0 4 2006

NOTA NO. DE 18/06

United States Department of State

*Washington, D.C.   20520*

Re:  Lucia Mabel Gonzalez Paredes
v.
Jose Luis Vila and Monica Nielsen
Case No. 1:06CV00089
U.S. District Court for the District of Columbia

To Whom It May Concern:

I, Gladys Boluda, Assistant Chief of Protocol of the United States Department of State, am responsible for registering and maintaining the official records of diplomatic and consular officers and other employees of foreign governments and international organizations in the United States and its Territories.  I hereby certify as follows:

The official records of the Department of State indicate that the Embassy of Argentina notified Mr. Jose Luis Vila to the Department of State on May 23, 2003, as a national of Argentina and a diplomatic agent at the Embassy of Argentina.  The Department of State's records indicate that he continues to serve in that capacity.  At the same time, the Embassy of Argentina notified Monica Nielsen as a national of Argentina and Mr. Vila's spouse residing in his household.

- 2 -

Article 31 of the Vienna Convention on Diplomatic Relations (23

UST 3227; TIAS 7502; 500 UNTS 95), states in pertinent part:

1.  A diplomatic agent shall enjoy immunity from the criminal jurisdiction
    of the receiving State.  He shall also enjoy immunity from its civil and
    administrative jurisdiction except in the case of:

    (a)    a real action relating to private immovable property situated in
           the territory of the receiving State, unless he holds it on behalf
           of the sending State for the purposes of the mission;

    (b)    an action relating to succession in which the diplomatic agent
           is involved as executor, administrator, heir or legatee as a
           private person and not on behalf of the sending State;

    (c)    an action relating to any professional or commercial activity
           exercised by the diplomatic agent in the receiving State outside
           his official functions.

2.  A diplomatic agent is not obliged to give evidence as a witness.

\* \* \* \* \*

Article 37(1) of the Convention provides:

1.  The members of the family of a diplomatic agent forming part of his
    household shall, if they are not nationals of the receiving State, enjoy
    the privileges and immunities specified in Articles 29 to 36.

\* \* \* \* \*

Gladys Boluda
Assistant Chief of Protocol

Department of State,

Washington,  September 25, 2006.

CONFIDENCIAL

*Embassy*
*of the*
*Argentine Republic*

**"URGENT"**

DE 150 /2006

        The Embassy of the Argentine Republic presents its compliments to the Department of State -Office of Protocol- and wishes to refer to this Embassy's note DE 71/2006 dated April 12, 2006.

        As previously informed in the above mentioned note, the Ministry of Foreign Affairs gave authorization to plead the "Immunity of Jurisdiction" in respect to the Court and the Civil suit against Counselor Jose Luis Vila and his spouse Monica Nielsen, pursuant to the Vienna Convention on Diplomatic Relations.

        The Embassy of Argentina kindly requests the U.S. Department of State to certify the accreditation of the diplomatic status of both, Counselor Jose Luis Vila and his spouse, Monica Nielsen, and that this certification be forwarded to the US Court in the case (U.S. District Court for the District of Columbia- Judge Paul Friedman). It would be greatly appreciated if a copy of this certification as well as of the note previously sent by the Department of State to the Court is sent to the Argentine Embassy so that it may be added to the writ to be presented in Court.

        The Embassy of the Argentine Republic avails itself of this opportunity to renew to the Department of State -Office of Protocol- the assurances of its highest consideration.

*Washington DC, September 18, 2006.*



AXL
RAC
PAV

TO THE DEPARTMENT OF STATE
-OFFICE OF PROTOCOL-

*Embassy*
*of the*
*Argentine Republic*

CONFIDENCIAL

DE  71  /2006

      The Embassy of the Argentine Republic presents its compliments to the Department of State –Office of Protocol– and wishes to inform that a civil suit was filed in the District Court for the District of Columbia by Ms. Gonzalez Paredes, against Counselor Jose Luis Vila, a Diplomat of this Embassy, and his spouse.

      Ms. Gonzalez claims she was underpaid wages as live-in domestic employee during her period of employment.(April 2004/February 2005).

      This civil suit involves a duly accredited diplomatic officer of this Embassy, Counselor José Luis Vila and his spouse, Mónica Nielsen. A copy of the subpoena and notification is herewith enclosed. It must be pointed out that the subpoena was served at the private domicile of Mr. Vila and his spouse.

      Pursuant to the Vienna Convention on Diplomatic Relations of which both our Country and the Unites States are Parties, Counselor Vila and his spouse have immunity of jurisdiction in respect to the Court and the civil suit being conducted there. The authorization by the Ministry of Foreign Affairs to plead this argument in Court is being processed.

/.

TO THE DEPARTMENT OF STATE

–OFFICE OF PROTOCOL–

CONFIDENCIAL

../ /

A Memorandum with annexes, prepared by the diplomatic officer and his spouse informing the fulfilling of their contract obligations to Ms. Gonzalez, is attached.

The Ministry of Foreign Affairs, requests the Department of State to convey to the Court these circumstances as well as the additional information enclosed.

The Embassy of the Argentine Republic avails itself of this opportunity to renew to the Department of State -Office of Protocol- the assurances of its highest consideration.

Washington DC, April 12, 2006.

BJS
124 RAC
- PAV

w.enclosure

**FILED**

JAN 1 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LUCIA MABEL GONZALEZ PAREDES ⟩
10019 Georgia Avenue
Silver Spring, MD 20902
(703)-863-4881

                          **Plaintiff,**

v.

JOSE LUIS VILA and MONICA NIELSEN ⟩
4545 Connecticut Ave., N.W., Apt. 726 ⟩
Washington, D.C. 20008 ⟩
                              ⟩
                     **Defendants,** ⟩

CASE NUMBER 1:06CV00089

JUDGE: Paul L. Friedman

DECK TYPE: Labor/ERISA (non-employmen

DATE STAMP: 01/18/2006

**JURY ACTION**

(1) Violation of Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*);
(2) Violation of D.C. Minimum Wage and Payment Laws (D.C. Code § 32-1001-1013, §32-1301-1310);
(3) Breach of Contract; and
(4) Unjust Enrichment

<u>Jury Trial Requested</u>

### COMPLAINT

Lucia Mabel Gonzalez Paredes (*hereinafter* "Ms. Gonzalez") is a domestic worker from

Paraguay bringing this action against her former employers, Jose Luis Vila and Monica Nielsen

(collectively, "the Vilas"), Argentine diplomats who paid her as little as $1.60 per hour, violated

the terms of her employment contract, and required her to perform specialized labor not set forth

in her contract. Mr. Vila and Ms. Nielsen abused their positions of power, requiring Ms.

Gonzalez to perform physical therapy and health-related tasks for their infant child in addition to

her domestic work, while violating federal and local minimum wage laws, thus unjustly profiting

off of services Ms. Gonzalez performed between April 2004 and February 2005. Ms. Gonzalez

seeks relief pursuant to federal minimum wage and overtime laws, D.C. minimum wage and

payment laws, and D.C. contract law. She seeks the amount of unpaid minimum wages and

overtime compensation, liquidated damages, reasonable attorneys' fees, and costs of this action as authorized by the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq.*  Plaintiff alternatively seeks wages, penalties, reasonable attorneys fees, and costs of this action, pursuant to D.C. Code §§ 32-1303 (4) and 32-1308(b), the D.C. Wage Payment and Collection Act (*hereinafter* "DCWPA") and the D.C. Minimum Wage Revision Act (*hereinafter* "DCMWRA"), D.C. Code § 32-1012 *et seq.*  In the alternative, Plaintiff seeks the amount owed due to Defendants' breach of contract or for unjust enrichment in *quantum meruit* pursuant to the common law of the District of Columbia.

### Jurisdiction

1. Plaintiff brings this action under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; provisions of the law of the District of Columbia, D.C. Code §§ 32-1001-1013, *et seq.* and §§ 32- 1301-1310, *et seq.*  Jurisdiction over all claims is proper under 28 U.S.C. § 1351, which provides for original jurisdiction over diplomats.  Additionally, jurisdiction over the federal claims is proper under 28 U.S.C. § 1331 and over the state claims via the supplemental jurisdiction of 28 U.S.C. § 1367.

### Parties

2. Plaintiff Ms. Gonzalez is an adult citizen of Paraguay currently residing in Maryland, who entered the U.S. on an A-3 visa, available to employees of diplomats, issued in April 2004.  During the time relevant to this action, Ms. Gonzalez lived with and was employed as a domestic worker and child care provider by Defendants in the District of Columbia.

3. Defendant Jose Luis Vila (*hereinafter*, "Mr. Vila") is an adult citizen of Argentina, resident in Washington, D.C. on the basis of an A-1 diplomatic visa, and was an employer of Ms. Gonzalez.

4.  Defendant Monica Nielsen (*hereinafter* "Ms. Nielsen") is the wife of Mr. Vila, and, upon information and belief, is an adult citizen of Argentina, and is resident in Washington, D.C., upon information and belief on the basis of an A-2 diplomatic visa, and was an employer of Ms. Gonzalez.

5.  During the time relevant to this action, Mr. Vila and Ms. Nielsen were the joint employers of Ms. Gonzalez pursuant to the FLSA, DCMWRA, the DCMWPA, and 29 CFR §§ 791.1 & 791.2, in that Mr. Vila and Ms. Nielsen, *inter alia*, held the power to assign duties to Ms. Gonzalez and to supervise her job performance, and were responsible for paying her wages.

<u>Statement of Facts</u>

6.  In February 2004, while still living in Argentina, Ms. Gonzalez became acquainted with Mr. Vila and Ms. Nielsen, who hired her to perform house work and to take care of their soon-to-be born baby.

7.  Upon information and belief, Mr. Vila and Ms. Nielsen were planning to move to the U.S. so that Mr. Vila could take up his post at the Embassy of Argentina in Washington, D.C.

8.  Ms. Gonzalez was informed that one of the reasons she was being hired was to care for the couple's infant child.  It was necessary for the Vilas to have a child-care provider because Ms. Nielsen wanted to continue pursuing her legal education in the U.S.

9.  On or about April 20, 2004, Ms. Gonzalez and Mr. Vila signed an employment contract in order to fulfill the requirements of obtaining an A-3 diplomatic visa, which would allow Ms. Gonzalez to accompany Mr. Vila and Ms. Nielsen to the U.S. as their domestic servant.

10. Before signing the contract, Mr. Vila gave Ms. Gonzalez approximately 30 minutes to read the text and sign it, and then took the copy back from her in order to submit it to the U.S. Embassy. Ms. Gonzalez was never provided with her own copy of her contract.

11. Upon information and belief, the terms of the contract included that Ms. Gonzalez was to be paid a wage of $6.72 per hour, was to work forty hours per week, but that for each hour above forty, she was to be paid an overtime wage. She was also supposed to receive holiday and vacation time.

12. The contract also specified the household tasks she was to perform for the Vilas.

13. On the way to Ms. Gonzalez's A-3 visa interview at the U.S. Embassy in Argentina, Mr. Vila informed Ms. Gonzalez that he only intended to pay her $500.00 per month, approximately $3.13/hr., despite the fact that her contract dictated she was to paid $6.72/hr., plus overtime. However, Mr. Vila told Ms. Gonzalez that in order to obtain her A-3 visa, she should tell the U.S. Embassy employees that she would be receiving the wage set forth in her contract.

14. Mr. Vila justified this smaller wage by claiming that health insurance, food, and rent were very expensive in the United States and that he could not afford to pay her more than $500.00 per month.

15. When, during Ms. Gonzalez's interview at the U.S. Embassy, she was asked how much she would be paid for her work in the U.S., Mr. Vila turned to face Ms. Gonzalez and gestured to her in a way that she interpreted to mean that she should answer as he had told her to on the ride to the Embassy. In compliance, she replied to the American officials that she would be paid the wage indicated in her contract.

16. On April 29, 2004, Ms. Gonzalez arrived in Washington, D.C. with Mr. Vila, Ms. Nielsen, and their newborn daughter. The next day, she began working as the Vilas' child care provider and domestic worker.

17. From the time she began until February 19, 2005, Ms. Gonzalez worked, on average, 77 hours per week as the Vilas' child care provider and domestic worker, and received only $500.00 per month, an hourly wage of approximately $1.60.

18. Ms. Gonzalez performed tasks such as caring for Mr. and Mrs. Vilas' infant daughter, performing physical therapy on the child, cleaning the house, running errands, washing clothes, and cooking for the family.

19. During the ten month period of her employment, Ms. Gonzalez's typically worked from approximately eight o'clock in the morning until ten or eleven o'clock at night Monday through Friday, and from seven o'clock in the morning until three or four o'clock in the afternoon on Saturdays.

20. Ms. Gonzalez's work responsibilities were primarily set by Ms. Nielsen, who decided what meals she cooked, what chores she had to do every day, and what errands to run, and who had the most day-to-day involvement with Ms. Gonzalez's schedule.

21. In addition to her domestic responsibilities, Ms. Gonzalez was responsible for learning to perform and for performing complex physical therapy on the Vilas' epileptic infant daughter.

22. Ms. Gonzalez was trained to perform these physical therapy tasks by the Vilas' part-time physical therapist, who was paid approximately $180 per hour. Ms. Gonzalez performed the required therapies on the Vila's child almost every day.

23. This responsibility involved administering specialized feeding times and methods, specialized food preparation, weighing and measuring the child's intake and outtake, massage therapy, carefully monitoring the child's health condition, and helping a certified physical therapist in her tasks.

24. Upon information and belief, Mr. Vila and Ms. Nielsen assigned these responsibilities to Ms. Gonzalez because they did not want to pay for a full-time professional nurse or physical therapist.

25. Ms. Gonzalez's time off during this period was very limited, and consisted of visiting her church on Sunday mornings, and occasional visits with friends. Ms. Gonzalez rarely received time to rest during American or Argentine holidays.

26. In addition, between December 16, 2004 and January 8, 2005, Ms. Gonzalez was in Argentina with Mr. Vila and his family, and therefore Ms. Gonzalez is not seeking wages for this period.

27. While still in Argentina, Mr. Vila orally promised Mabel health insurance when she came to the United States, a promise which he had used to explain the anticipated reduction in her actual salary as compared to the salary promised in the contract. Despite this promise, Ms. Gonzalez never received health insurance in the United States.

28. In early December 2004, Ms. Gonzalez became sick and was hospitalized with a virus at Upper Cardozo Clinic in Washington, D.C. Due to her lack of insurance, Ms. Gonzalez had to pay all of her medical bills without the help of Mr. Vila or Ms. Nielsen, in the amount of approximately $300.00.

29. At one point in early 2005, Mr. Vila asked Ms. Gonzalez if she had a copy of her contract, to which she responded that she did not. When Ms. Gonzalez requested a copy

6

of her contract, Ms. Nielsen responded that Ms. Gonzalez did not need a copy of her

contract, that her passport was sufficient documentation, and so denied Ms. Gonzalez's

request.

30. From late December 2004 to early January 2005, Ms. Gonzalez accompanied the Vilas

on a holiday trip back to Argentina, as their personal child-care provider and domestic

servant, and continued to perform the same tasks she performed for the Vilas in the U.S.

31. In February 2005, after conversations with her church friends, Ms. Gonzalez realized she

should confront the Vilas about the fact that she was being underpaid and overworked in

violation of her employment contract.

32. On or about February 15, 2005 Mr. Vila came home from work in a hurry with several

documents he said were receipts and demanded that Ms. Gonzalez sign them.

33. Mr. Vila explained that she had to sign the documents to show that she had been paid

amounts appropriate with the terms of her employment contract. When Ms. Gonzalez

read the receipts, she told Mr. Vila that the amounts on the receipts were not the amounts

she had been paid.

34. Ms. Gonzalez attempted to avoid properly signing them, knowing the receipts were false,

by merely drawing circles in place of her signature. Mr. Vila stated that he knew the

marks were not her signatures, and demanded that she sign all of the receipts. Ms

Gonzalez reluctantly signed all the receipts at once, making double marks on some. The

receipts were not itemized and reflected incorrect amounts and dates of payment.

35. On February 19, 2005, Ms. Gonzalez confronted the Vilas and requested additional pay

or permission to seek other employment.

36. The Vilas first offered to pay Ms. Gonzalez an extra $50 per month, but then suggested they would simply pay Ms. Gonzalez's plane ticket back to Argentina.

## CAUSES OF ACTION

### First Claim for Relief

### Violation of the Fair Labor Standards Act

37. Ms. Gonzalez incorporates by reference paragraphs 1-36.

38. During the time relevant to this matter, Mr. Vila and Ms. Nielsen were employers of Ms. Gonzalez, pursuant to 29 U.S.C. § 203 and 29 CFR §§ 791.1 & 791.2.

39. As such, Mr. Vila and Ms. Nielsen were obligated to pay Ms. Gonzalez the federal minimum wage of $5.15 per hour for each hour that Ms. Gonzalez worked for them, pursuant to § 6(a) of the Fair Labor Standards Act, 29 U.S.C. § 206(a).

40. By the acts described in this complaint, Mr. Vila and Ms. Nielsen failed to pay the minimum wage for each hour that Ms. Gonzalez worked for them, in violation of § 6(a) of the FLSA, 29 U.S.C. § 206(a).

41. Ms. Gonzalez is seeking compensation in the amount of the federal minimum wage, $5.15 per hour, for every hour that she worked for Mr. Vila and Ms. Nielsen and was not compensated. She received only $500 per month for the hours she worked, or the equivalent of approximately $1.60 per hour.

42. Mr. Vila and Ms. Nielsen's refusal to pay Ms. Gonzalez at least the minimum wage for every hour she worked for them was willful and unreasonable under §16(a) of the FLSA, 29 U.S.C. § 216(a).

43. Pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b), Ms. Gonzalez is also owed liquidated damages in an amount equal to the wages due to her.

44. Pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b), Ms. Gonzalez also requests reasonable attorney's fees and costs.

## Second Claim for Relief

## Violation of D.C. Minimum Wage and Payment Laws (D.C. Code § 32-1001-1013, §32-1301-1310)

45. Ms. Gonzalez incorporates by reference paragraphs 1 through 44.

46. During the time relevant to this action, Mr. Vila and Ms. Nielsen were required to pay Ms. Gonzalez the D.C. minimum wage of $6.15 per hour for every hour she worked for them before January 1, 2005, and $6.60 per hour for every hour she worked for them in January and February 2005.  Minimum Wage Revision Act, 1992 *as amended*, D.C. Code 32-1003(a)(1).

47. By the actions described in this Complaint, and in violation of the Minimum Wage Revision Act, D.C. Code § 32-1002, *et seq.*, Mr. Vila and Ms. Nielsen failed and refused to pay Ms. Gonzalez the minimum wage for every hour that she worked for them.

48. Mr. Vila and Ms. Nielsen failed to keep adequate records of Ms. Gonzalez's wages, pay period, and hours and days worked, in violation of D.C. Code § 32-1008(a), 7 DCMR § 911 & 914.

49. Mr. Vila and Ms. Nielsen failed to provide Ms. Gonzalez with itemized statements showing the dates of wage payments, gross wages paid, the hours worked and hourly wage paid, and any deductions taken prior to payment, in violation of D.C. Code § 32-1008(b), 7 DCMR § 911.2.

50. During the time relevant to this action, Mr. Vila and Ms. Nielsen were obligated to pay Ms. Gonzalez at least twice each calendar month, at regular and designated intervals,

D.C. Code § 32-1302, and without more than ten working days between the close of a

pay period and the payment of wages for that period. D.C. Code §§ 32-1301-1302.

51. By the actions described in this Complaint, and in violation of the D.C. Minimum Wage

Payment and Collection Act, D.C. Code §§ 32-1302, *et seq.*, Mr. Vila and Ms. Nielsen

failed and refused to pay Ms. Gonzalez the wages she earned at regular and designated

intervals, twice each month, or with no more than ten working days between the close of

a pay period and payment of wages.

52. Ms. Gonzalez seeks compensation equivalent to the minimum wage ($6.15/hr. prior to

Jan. 1, 2005, $6.60/hr. for the hours worked in January and February 2005) for all hours

she worked for Mr. Vila and Ms. Nielsen from April 2004 to February 2005.

53. Ms. Gonzalez also seeks an equal amount in liquidated damages, pursuant to D.C. Code §

32-1012(a).

54. Pursuant to § 32-1012(c), Ms. Gonzalez is also requesting reasonable attorney's fees and

costs.

### Third Claim for Relief

### Breach of Contract

55. Ms. Gonzalez incorporates by reference paragraphs 1 through 54.

56. Mr. Vila offered, and Ms. Gonzalez accepted, an employment contract at a wage rate set

at $6.72 per hour, plus overtime pay.

57. The wage rate and overtime rate were material terms of the contract.

58. Mr. Vila breached his contract with Ms. Gonzalez, *inter alia*, in that he did not comply

with the wage provisions or overtime promise to compensate Ms. Gonzalez at a wage rate

of $6.72 per hour for each hour worked up to 40 hours per week, and overtime

compensation for each hour worked over 40 hours per week.

59. Ms. Gonzalez suffered and continues to suffer economic damages due to Mr. Vila and

Ms. Nielsen's breach.

60. Ms. Gonzalez is owed unpaid wages in the amount of $13,078.44.

### Fourth Claim for Relief

### Claim for Unjust Enrichment

61. Ms. Gonzalez reincorporates the allegations above from paragraphs 1 through 60.

62. Pursuant to the common law of unjust enrichment of the District of Columbia, Ms.

Gonzalez is owed payment for services rendered and benefits conferred on Mr. Vila and

Ms. Nielsen between April 2004 and February 2005 but for which she was not

compensated.

63. Mr. Vila and Ms. Nielsen unjustly retained the benefits of Ms. Gonzalez's labor—both

through her work as a domestic and as a de facto physical therapist for their infant

child—without properly compensating Ms. Gonzalez for those services.

64. Ms. Gonzalez seeks relief for compensation of the services Mr. Vila and Ms. Nielsen

unjustly profited off of in the amount that is fair and just in the eyes of the court.

### Prayer for Relief

WHEREFORE, Plaintiff Lucia Mabel Gonzalez Parades respectfully requests that this Court

enter an order in favor of Plaintiff and against Defendants Jose Luis Vila and Monica Nielsen for

the following relief:

11

a. Pursuant to § 6 of the Fair Labor Standards Act, 29 U.S.C. § 206, the amount of minimum wages due, and an equal amount as liquidated damages, plus reasonable attorneys' fees, and costs of this action;

b. Pursuant to §§ 32-1012 *et seq*. of the D.C. Minimum Wage Revision Act, and 32-1302 *et seq*. of the D.C. Wage Payment and Collection Law, the amount of D.C. minimum wages due, and an equal amount as liquidated damages, plus reasonable attorneys' fees, and costs of this action;

c. Pursuant to the D.C. common law of contracts, the amount of wages and overtime owed as specified in the employment contract, or $ 13,078.44;

d. Pursuant the D.C. common law of unjust enrichment, the amount of wages owed for services rendered pursuant to the employment contract which the Vilas benefited from; and

e. Such further relief as this Court deems just and equitable.

**Jury Demand**

Ms. Gonzalez requests a trial by jury.

Dated: January 18, 2006

Respectfully Submitted,

International Human Rights Law Clinic

By: Muneer I. Ahmad, Esq., Bar No. 483131
International Human Rights Law Clinic
American University Washington College of Law
4801 Massachusetts Ave., N.W., Suite 417
Washington, D.C. 20016

12

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

EMBAJADA ARGENTINA
WASHINGTON D.C.

RECIBIDOS

FECHA  FEB 2 2 2006

RESPONSABLE *R.A.C./R.V.*

TOMO CONOCIMIENTO

LUCIA MABEL GONZALEZ PAREDES
10019 Georgia Ave.
Silver Spring, MD  20902
(703) 863-4881

**SUMMONS IN A CIVIL CASE**

V.

JOSE LUIS VILA
4545 Connecticut Ave., N.W. # 726
Washington, D.C.  20008

CASE NUMBER  1:06CV00089

JUDGE: Paul L. Friedman **JURY ACTION**

DECK TYPE: Labor/ERISA (non-employme[

DATE STAMP: 01/18/2006

TO: (Name and address of Defendant)

MR. JOSE LUIS VILA
4545 Connecticut Ave., N.W. #726
Washington, D.C. 20008

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Muneer Ahmad, Esq.
International Human Rights Law Clinic
American University Washington College of Law
4801 Massachusetts Ave., N.W. Suite 417
Washington, D.C. 20016   (202)-274-4147

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

NANCY M. MAYER-WHITTINGTON                    JAN 18 2005

CLERK                                                          DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

☐ Other (specify): _____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
Date                                    Signature of Server

_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in a delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to a trial of your case by a United States Magistrate Judge. By statute, 28 U.S.C. § 636(c), Fed.R.Civ.P.73 and Local Rule 502, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

## WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Rule 206 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial.

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Attached is a copy of the "Consent to Proceed Before a United States Magistrate Judge for All Purposes" form. Your response should be made to the Clerk of the United States District Court only.

## WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned for all purposes to a Magistrate Judge.

CO-942A
Rev 3/95
Rev 7/99

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

# INITIAL ELECTRONIC CASE FILING
# ORDER

Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers. Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. Regardless of what option, counsel chooses the complaint/notice of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- All subsequent filings <u>must</u> be made electronically.

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.



## FRIEDMAN, J. PLF
### UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### ELECTRONIC CASE FILES
### Attorney/Participant Registration Form

## LIVE SYSTEM

This form shall be used to register for an account on the Court's Electronic Case Files (ECF) system and to subscribe to the ECF EMail (Listserver) notification service. Registered attorneys and other participants will have privileges both to electronically submit documents, and to view and retrieve electronic docket sheets and documents for all cases assigned to the Electronic Case Files system. Listserver subscribers receive email messages whenever the Court wishes to electronically notify ECF registrants of pertinent ECF information.

The following information is required for registration:

First Name/Middle Initial/Last Name   _____

Last four digits of Social Security Number   _____

DC Bar ID#.   _____

Firm Name   _____

Firm Address   _____

Voice Phone Number   _____

FAX Phone Number   _____

Internet E-Mail Address   _____

By submitting this registration form, the undersigned agrees to abide by the following rules:

1.   This system is for use only in cases permitted by the **U.S. District Court for the District of Columbia.** It may be used to file and view electronic documents, docket sheets, and notices. Please visit the Court's ECF Internet, www.dcd.uscourts.gov, website to schedule training.

2.   Pursuant to Federal Rule of Civil Procedure 11, every pleading, motion, and other paper (except list, schedules, statements or amendments thereto) shall be signed by at least one attorney of record or, if the party is not represented by an attorney, all papers shall be signed by the party. An attorney's/participant's password issued by the court

combined with the user's identification, serves as and constitutes the attorney's/participant's signature. Therefore, an attorney/participant must protect and secure the password issued by the court. If there is any reason to suspect the password has been compromised in any way, it is the duty and responsibility of the attorney/participant to immediately notify the court. This should include the resignation or reassignment of the person with authority to use the password. The Court will immediately delete that password from the electronic filing system and issue a new password.

3. An attorney's/participant's registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process; submit the client to the jurisdiction of the Court; or operate as a consent to accept service of pleadings, documents, and orders in actions in which such attorney/participant has not entered an appearance. An attorney's/participant's registration will constitute a waiver in law only of conventional service of other non-process pleadings, documents, and orders in the case. The attorney/participant agrees to accept, on behalf of the client, service of notice of the electronic filing by hand, facsimile or authorized e-mail.

4. Upon receipt of your login and password, you are strongly encouraged to change your password, which may be done through the Utilities function, to a name easily recalled. **You may be subjected to a fee, should the Clerk's Office have to create a new password for you, or alternatively, you may be required to appear in person to receive your new password.**

5. Attorneys who are active members of the bar of this Court, or government attorneys who are employed or retained by the United States, or who have been permitted to proceed *pro hac vice*, must file pleadings electronically.

Please return this form to:          U.S. District Court for the District of Columbia
                                     Attn:   Attorney Admissions
                                     333 Constitution Avenue NW, Room 1825
                                     Washington, DC  20001

Or FAX to:                           Peggy Trainum
                                     U.S. District Court for the District of Columbia
                                     (202) 354-3023

Applicant's Signature

| Full Last Name | Initial of First Name | Last 4 Digits SS# |
|---|---|---|

**MEMORANDUM**

TO:        Jose Luis Vila

FROM:      Michael E. Veve, Esquire

DATE:      March 15, 2006

SUBJECT:   <u>Lucia Mabel Gonzalez Paredes v. Jose Luis Vila and Monica Nielsen</u>

On January 18, 2006, Lucia Mabel Gonzalez Paredes filed a civil action against your wife and you claiming she was underpaid wages as your live-in domestic employee during her period of employment (April 2004 to February 2005). The action was filed in the U.S. District Court for the District of Columbia.

The complaint alleges Ms. Gonzalez worked an average of 77 hours a week, and that she was paid only $500 per month. Based on these allegations, her complaint states four (4) related causes of action:

    1)     That these payments violated the federal minimum wage laws;

    2)     That these payments violated the District of Columbia minimum wage and payment laws;

    3)     That these payments violated her employment contract; and

    4)     That these payments constituted common law unjust enrichment.

The complaint demands a total of between $13,000 and $25,000 in wages, an equal amount in statutory liquidated damages, plus attorneys fees.

Our defense and proposed response will prove Ms. Gonzalez did not work and could not have worked 77 hours per week, and that she was paid well above legal minimum wages and as her employment contract required. Our evidence includes oral testimony of direct witnesses, including the defendants and their friends and neighbors, payment receipts signed by Ms. Gonzalez, and other related evidence to be gathered before trial, including Ms. Gonzalez's travel documents, personal notes, expense receipts, etc.

A copy of the complaint is enclosed. On our motion, the judge has granted us until April 13, 2006 to answer the complaint or to request another time extension while the diplomatic immunity waiver application is being processed.