IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN 18 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LUCIA MABEL GONZALEZ PAREDES )
10019 Georgia Avenue
Silver Spring, MD 20902
(703)-863-4881
                Plaintiff,

v.

JOSE LUIS VILA and MONICA NIELSEN )
4545 Connecticut Ave., N.W., Apt. 726
Washington, D.C. 20008
                Defendants,

CASE NUMBER: 1:06CV00089
JUDGE: Paul L. Friedman
DECK TYPE: Labor/ERISA (non-employment)
DATE STAMP: 01/18/2006

**JURY ACTION**

(1) Violation of Fair Labor
Standards Act (29 U.S.C.
§§ 201, *et seq.*);
(2) Violation of D.C. Minimum
Wage and Payment Laws
(D.C. Code § 32-1001-1013,
§32- 1301-1310);
(3) Breach of Contract; and
(4) Unjust Enrichment

**Jury Trial Requested**

**COMPLAINT**

Lucia Mabel Gonzalez Paredes (*hereinafter* "Ms. Gonzalez") is a domestic worker from Paraguay bringing this action against her former employers, Jose Luis Vila and Monica Nielsen (collectively, "the Vilas"), Argentine diplomats who paid her as little as $1.60 per hour, violated the terms of her employment contract, and required her to perform specialized labor not set forth in her contract. Mr. Vila and Ms. Nielsen abused their positions of power, requiring Ms. Gonzalez to perform physical therapy and health-related tasks for their infant child in addition to her domestic work, while violating federal and local minimum wage laws, thus unjustly profiting off of services Ms. Gonzalez performed between April 2004 and February 2005. Ms. Gonzalez seeks relief pursuant to federal minimum wage and overtime laws, D.C. minimum wage and payment laws, and D.C. contract law. She seeks the amount of unpaid minimum wages and

overtime compensation, liquidated damages, reasonable attorneys' fees, and costs of this action as authorized by the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq*. Plaintiff alternatively seeks wages, penalties, reasonable attorneys fees, and costs of this action, pursuant to D.C. Code §§ 32-1303(4) and 32-1308(b), the D.C. Wage Payment and Collection Act (*hereinafter* "DCWPA") and the D.C. Minimum Wage Revision Act (*hereinafter* "DCMWRA"), D.C. Code § 32-1012 *et seq*. In the alternative, Plaintiff seeks the amount owed due to Defendants' breach of contract or for unjust enrichment in *quantum meruit* pursuant to the common law of the District of Columbia.

## Jurisdiction

1. Plaintiff brings this action under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.; provisions of the law of the District of Columbia, D.C. Code §§ 32-1001-1013, *et seq*. and §§ 32-1301-1310, *et seq*. Jurisdiction over all claims is proper under 28 U.S.C. § 1351, which provides for original jurisdiction over diplomats. Additionally, jurisdiction over the federal claims is proper under 28 U.S.C. § 1331 and over the state claims via the supplemental jurisdiction of 28 U.S.C. § 1367.

## Parties

2. Plaintiff Ms. Gonzalez is an adult citizen of Paraguay currently residing in Maryland, who entered the U.S. on an A-3 visa, available to employees of diplomats, issued in April 2004. During the time relevant to this action, Ms. Gonzalez lived with and was employed as a domestic worker and child care provider by Defendants in the District of Columbia.

3. Defendant Jose Luis Vila (*hereinafter*, "Mr. Vila") is an adult citizen of Argentina, resident in Washington, D.C. on the basis of an A-1 diplomatic visa, and was an employer of Ms. Gonzalez.

2

4. Defendant Monica Nielsen (*hereinafter* "Ms. Nielsen") is the wife of Mr. Vila, and, upon information and belief, is an adult citizen of Argentina, and is resident in Washington, D.C., upon information and belief on the basis of an A-2 diplomatic visa, and was an employer of Ms. Gonzalez.

5. During the time relevant to this action, Mr. Vila and Ms. Nielsen were the joint employers of Ms. Gonzalez pursuant to the FLSA, DCMWRA, the DCMWPA, and 29 CFR §§ 791.1 & 791.2, in that Mr. Vila and Ms. Nielsen, *inter alia*, held the power to assign duties to Ms. Gonzalez and to supervise her job performance, and were responsible for paying her wages.

Statement of Facts

6. In February 2004, while still living in Argentina, Ms. Gonzalez became acquainted with Mr. Vila and Ms. Nielsen, who hired her to perform house work and to take care of their soon-to-be born baby.

7. Upon information and belief, Mr. Vila and Ms. Nielsen were planning to move to the U.S. so that Mr. Vila could take up his post at the Embassy of Argentina in Washington, D.C.

8. Ms. Gonzalez was informed that one of the reasons she was being hired was to care for the couple's infant child. It was necessary for the Vilas to have a child-care provider because Ms. Nielsen wanted to continue pursuing her legal education in the U.S.

9. On or about April 20, 2004, Ms. Gonzalez and Mr. Vila signed an employment contract in order to fulfill the requirements of obtaining an A-3 diplomatic visa, which would allow Ms. Gonzalez to accompany Mr. Vila and Ms. Nielsen to the U.S. as their domestic servant.

3

10. Before signing the contract, Mr. Vila gave Ms. Gonzalez approximately 30 minutes to read the text and sign it, and then took the copy back from her in order to submit it to the U.S. Embassy. Ms. Gonzalez was never provided with her own copy of her contract.

11. Upon information and belief, the terms of the contract included that Ms. Gonzalez was to be paid a wage of $6.72 per hour, was to work forty hours per week, but that for each hour above forty, she was to be paid an overtime wage. She was also supposed to receive holiday and vacation time.

12. The contract also specified the household tasks she was to perform for the Vilas.

13. On the way to Ms. Gonzalez's A-3 visa interview at the U.S. Embassy in Argentina, Mr. Vila informed Ms. Gonzalez that he only intended to pay her $500.00 per month, approximately $3.13/hr., despite the fact that her contract dictated she was to paid $6.72/hr. plus overtime. However, Mr. Vila told Ms. Gonzalez that in order to obtain her A-3 visa, she should tell the U.S. Embassy employees that she would be receiving the wage set forth in her contract.

14. Mr. Vila justified this smaller wage by claiming that health insurance, food, and rent were very expensive in the United States and that he could not afford to pay her more than $500.00 per month.

15. When, during Ms. Gonzalez's interview at the U.S. Embassy, she was asked how much she would be paid for her work in the U.S., Mr. Vila turned to face Ms. Gonzalez and gestured to her in a way that she interpreted to mean that she should answer as he had told her to on the ride to the Embassy. In compliance, she replied to the American officials that she would be paid the wage indicated in her contract.

16. On April 29, 2004, Ms. Gonzalez arrived in Washington, D.C. with Mr. Vila, Ms. Nielsen, and their newborn daughter. The next day, she began working as the Vilas' child care provider and domestic worker.

17. From the time she began until February 19, 2005, Ms. Gonzalez worked, on average, 77 hours per week as the Vilas' child care provider and domestic worker, and received only $500.00 per month, an hourly wage of approximately $1.60.

18. Ms. Gonzalez performed tasks such as caring for Mr. and Mrs. Vilas' infant daughter, performing physical therapy on the child, cleaning the house, running errands, washing clothes, and cooking for the family.

19. During the ten month period of her employment, Ms. Gonzalez's typically worked from approximately eight o'clock in the morning until ten or eleven o'clock at night, Monday through Friday, and from seven o'clock in the morning until three or four o'clock in the afternoon on Saturdays.

20. Ms. Gonzalez's work responsibilities were primarily set by Ms. Nielsen, who decided what meals she cooked, what chores she had to do every day, and what errands to run, and who had the most day-to-day involvement with Ms. Gonzalez's schedule.

21. In addition to her domestic responsibilities, Ms. Gonzalez was responsible for learning to perform and for performing complex physical therapy on the Vilas' epileptic infant daughter.

22. Ms. Gonzalez was trained to perform these physical therapy tasks by the Vilas' part-time physical therapist, who was paid approximately $180 per hour. Ms. Gonzalez performed the required therapies on the Vila's child almost every day.

5

23. This responsibility involved administering specialized feeding times and methods, specialized food preparation, weighing and measuring the child's intake and outtake, massage therapy, carefully monitoring the child's health condition, and helping a certified physical therapist in her tasks.

24. Upon information and belief, Mr. Vila and Ms. Nielsen assigned these responsibilities to Ms. Gonzalez because they did not want to pay for a full-time professional nurse or physical therapist.

25. Ms. Gonzalez's time off during this period was very limited, and consisted of visiting her church on Sunday mornings, and occasional visits with friends. Ms. Gonzalez rarely received time to rest during American or Argentine holidays.

26. In addition, between December 16, 2004 and January 8, 2005, Ms. Gonzalez was in Argentina with Mr. Vila and his family, and therefore Ms. Gonzalez is not seeking wages for this period.

27. While still in Argentina, Mr. Vila orally promised Mabel health insurance when she came to the United States, a promise which he had used to explain the anticipated reduction in her actual salary as compared to the salary promised in the contract. Despite this promise, Ms. Gonzalez never received health insurance in the United States.

28. In early December 2004, Ms. Gonzalez became sick and was hospitalized with a virus at Upper Cardozo Clinic in Washington, D.C. Due to her lack of insurance, Ms. Gonzalez had to pay all of her medical bills without the help of Mr. Vila or Ms. Nielsen, in the amount of approximately $300.00.

29. At one point in early 2005, Mr. Vila asked Ms. Gonzalez if she had a copy of her contract, to which she responded that she did not. When Ms. Gonzalez requested a copy

of her contract, Ms. Nielsen responded that Ms. Gonzalez did not need a copy of her contract, that her passport was sufficient documentation, and so denied Ms. Gonzalez's request.

30. From late December 2004 to early January 2005, Ms. Gonzalez accompanied the Vilas on a holiday trip back to Argentina, as their personal child-care provider and domestic servant, and continued to perform the same tasks she performed for the Vilas in the U.S.

31. In February 2005, after conversations with her church friends, Ms. Gonzalez realized she should confront the Vilas about the fact that she was being underpaid and overworked in violation of her employment contract.

32. On or about February 15, 2005 Mr. Vila came home from work in a hurry with several documents he said were receipts and demanded that Ms. Gonzalez sign them.

33. Mr. Vila explained that she had to sign the documents to show that she had been paid amounts appropriate with the terms of her employment contract. When Ms. Gonzalez read the receipts, she told Mr. Vila that the amounts on the receipts were not the amounts she had been paid.

34. Ms. Gonzalez attempted to avoid properly signing them, knowing the receipts were false, by merely drawing circles in place of her signature. Mr. Vila stated that he knew the marks were not her signatures, and demanded that she sign all of the receipts. Ms Gonzalez reluctantly signed all the receipts at once, making double marks on some. The receipts were not itemized and reflected incorrect amounts and dates of payment.

35. On February 19, 2005, Ms. Gonzalez confronted the Vilas and requested additional pay or permission to seek other employment.

36. The Vilas first offered to pay Ms. Gonzalez an extra $50 per month, but then suggested they would simply pay Ms. Gonzalez's plane ticket back to Argentina.

## CAUSES OF ACTION

### First Claim for Relief

### Violation of the Fair Labor Standards Act

37. Ms. Gonzalez incorporates by reference paragraphs 1-36.

38. During the time relevant to this matter, Mr. Vila and Ms. Nielsen were employers of Ms. Gonzalez, pursuant to 29 U.S.C. § 203 and 29 CFR §§ 791.1 & 791.2.

39. As such, Mr. Vila and Ms. Nielsen were obligated to pay Ms. Gonzalez the federal minimum wage of $5.15 per hour for each hour that Ms. Gonzalez worked for them, pursuant to § 6(a) of the Fair Labor Standards Act, 29 U.S.C. § 206(a).

40. By the acts described in this complaint, Mr. Vila and Ms. Nielsen failed to pay the minimum wage for each hour that Ms. Gonzalez worked for them, in violation of § 6(a) of the FLSA, 29 U.S.C. § 206(a).

41. Ms. Gonzalez is seeking compensation in the amount of the federal minimum wage, $5.15 per hour, for every hour that she worked for Mr. Vila and Ms. Nielsen and was not compensated. She received only $500 per month for the hours she worked, or the equivalent of approximately $1.60 per hour.

42. Mr. Vila and Ms. Nielsen's refusal to pay Ms. Gonzalez at least the minimum wage for every hour she worked for them was willful and unreasonable under §16(a) of the FLSA, 29 U.S.C. § 216(a).

43. Pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b), Ms. Gonzalez is also owed liquidated damages in an amount equal to the wages due to her.

44. Pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b), Ms. Gonzalez also requests reasonable attorney's fees and costs.

### Second Claim for Relief

### Violation of D.C. Minimum Wage and Payment Laws (D.C. Code § 32-1001-1013, §32-1301-1310)

45. Ms. Gonzalez incorporates by reference paragraphs 1 through 44.

46. During the time relevant to this action, Mr. Vila and Ms. Nielsen were required to pay Ms. Gonzalez the D.C. minimum wage of $6.15 per hour for every hour she worked for them before January 1, 2005, and $6.60 per hour for every hour she worked for them in January and February 2005. Minimum Wage Revision Act, 1992 *as amended*, D.C. Code 32-1003(a)(1).

47. By the actions described in this Complaint, and in violation of the Minimum Wage Revision Act, D.C. Code § 32-1002, *et seq.*, Mr. Vila and Ms. Nielsen failed and refused to pay Ms. Gonzalez the minimum wage for every hour that she worked for them.

48. Mr. Vila and Ms. Nielsen failed to keep adequate records of Ms. Gonzalez's wages, pay period, and hours and days worked, in violation of D.C. Code § 32-1008(a), 7 DCMR § 911 & 914.

49. Mr. Vila and Ms. Nielsen failed to provide Ms. Gonzalez with itemized statements showing the dates of wage payments, gross wages paid, the hours worked and hourly wage paid, and any deductions taken prior to payment, in violation of D.C. Code § 32-1008(b), 7 DCMR § 911.2.

50. During the time relevant to this action, Mr. Vila and Ms. Nielsen were obligated to pay Ms. Gonzalez at least twice each calendar month, at regular and designated intervals,

D.C. Code § 32-1302, and without more than ten working days between the close of a pay period and the payment of wages for that period. D.C. Code §§ 32-1301-1302.

51. By the actions described in this Complaint, and in violation of the D.C. Minimum Wage Payment and Collection Act, D.C. Code §§ 32-1302, *et seq.*, Mr. Vila and Ms. Nielsen failed and refused to pay Ms. Gonzalez the wages she earned at regular and designated intervals, twice each month, or with no more than ten working days between the close of a pay period and payment of wages.

52. Ms. Gonzalez seeks compensation equivalent to the minimum wage ($6.15/hr. prior to Jan. 1, 2005, $6.60/hr. for the hours worked in January and February 2005) for all hours she worked for Mr. Vila and Ms. Nielsen from April 2004 to February 2005.

53. Ms. Gonzalez also seeks an equal amount in liquidated damages, pursuant to D.C. Code § 32-1012(a).

54. Pursuant to § 32-1012(c), Ms. Gonzalez is also requesting reasonable attorney's fees and costs.

### Third Claim for Relief

### Breach of Contract

55. Ms. Gonzalez incorporates by reference paragraphs 1 through 54.

56. Mr. Vila offered, and Ms. Gonzalez accepted, an employment contract at a wage rate set at $6.72 per hour, plus overtime pay.

57. The wage rate and overtime rate were material terms of the contract.

58. Mr. Vila breached his contract with Ms. Gonzalez, *inter alia*, in that he did not comply with the wage provisions or overtime promise to compensate Ms. Gonzalez at a wage rate

of $6.72 per hour for each hour worked up to 40 hours per week, and overtime compensation for each hour worked over 40 hours per week.

59. Ms. Gonzalez suffered and continues to suffer economic damages due to Mr. Vila and Ms. Nielsen's breach.

60. Ms. Gonzalez is owed unpaid wages in the amount of $13,078.44.

### Fourth Claim for Relief

### Claim for Unjust Enrichment

61. Ms. Gonzalez reincorporates the allegations above from paragraphs 1 through 60.

62. Pursuant to the common law of unjust enrichment of the District of Columbia, Ms. Gonzalez is owed payment for services rendered and benefits conferred on Mr. Vila and Ms. Nielsen between April 2004 and February 2005 but for which she was not compensated.

63. Mr. Vila and Ms. Nielsen unjustly retained the benefits of Ms. Gonzalez's labor—both through her work as a domestic and as a de facto physical therapist for their infant child—without properly compensating Ms. Gonzalez for those services.

64. Ms. Gonzalez seeks relief for compensation of the services Mr. Vila and Ms. Nielsen unjustly profited off of in the amount that is fair and just in the eyes of the court.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff Lucia Mabel Gonzalez Parades respectfully requests that this Court enter an order in favor of Plaintiff and against Defendants Jose Luis Vila and Monica Nielsen for the following relief:

a. Pursuant to § 6 of the Fair Labor Standards Act, 29 U.S.C. § 206, the amount of minimum wages due, and an equal amount as liquidated damages, plus reasonable attorneys' fees, and costs of this action;

b. Pursuant to §§ 32-1012 et seq. of the D.C. Minimum Wage Revision Act, and 32-1302 et seq. of the D.C. Wage Payment and Collection Law, the amount of D.C. minimum wages due, and an equal amount as liquidated damages, plus reasonable attorneys' fees, and costs of this action;

c. Pursuant to the D.C. common law of contracts, the amount of wages and overtime owed as specified in the employment contract, or $13,078.44;

d. Pursuant the D.C. common law of unjust enrichment, the amount of wages owed for services rendered pursuant to the employment contract which the Vilas benefited from; and

e. Such further relief as this Court deems just and equitable.

## Jury Demand

Ms. Gonzalez requests a trial by jury.

Dated: January 18, 2006

Respectfully Submitted,

International Human Rights Law Clinic

_____
By: Muneer I. Ahmad, Esq., Bar No. 483131
International Human Rights Law Clinic
American University Washington College of Law
4801 Massachusetts Ave., N.W., Suite 417
Washington, D.C. 20016

12

Tel. (202) 274-4147
Fax (202) 274-0659