UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
LUCIA MABEL GONZALEZ PAREDES,       )
                                    )
      Plaintiff,                    )
                                    )
      v.                            )   Civil Action No. 06-0089 (PLF)
                                    )
JOSE LUIS VILA                      )
                                    )
      and                           )
                                    )
MONICA NIELSEN,                     )
                                    )
      Defendants.                   )
_____)

OPINION

        This matter is before the Court on defendants' motion to dismiss the complaint and quash service of process on the grounds that both defendants are diplomatically immune from suit.[1] Plaintiff Lucia Mabel Gonzalez Parades, a domestic worker from Paraguay, brought this lawsuit against her former employers, Jose Luis Vila and his wife Monica Nielsen. See Complaint ("Compl.") at 1. Plaintiff brings suit under the Fair Labor Standards Act ("FSLA"), the District of Columbia Minimum Wage Revision Act, and the District of Columbia Minimum

---

[1] The papers submitted in connection with this motion include: defendants' motion to quash service of process and dismiss the complaint ("Mot."); plaintiff's memorandum of points and authorities in opposition to defendants' motion to quash service of process and dismiss the complaint ("Opp."); defendants' response to plaintiff's opposition to motion to quash service of process and dismiss the complaint ("Resp."); a letter from the Argentine Embassy to the Court (authorized to be filed by fiat of the undersigned on October 13, 2006) ("Argentina Letter"); a Statement of Interest of the United States ("Statement of Interest"); and an *amici curiae* brief filed, with leave of the Court, by the American Civil Liberties Union, Break the Chain Campaign, CASA of Maryland, and Global Rights – Partners for Justice ("*Amici* brief").

Wage Payment and Collection Act, and for common law breach of contract and unjust enrichment. See id. at 2, 12. For the reasons explained below, the Court grants defendants' motion and dismisses the complaint without prejudice to the claims being re-filed if and when the defendants are no longer diplomatically immune from suit.[2]

I. BACKGROUND

Ms. Gonzalez alleges that the defendants hired her in February 2004, while she was living in Argentina, to perform house work and take care of their soon-to-be-born baby. See Compl. ¶ 6. Ms. Gonzalez alleges that she was hired in part to care for the defendants' child so that Ms. Nielsen could pursue her legal education in the United States while her husband worked at the Embassy of Argentina here in Washington, D.C. See id. ¶ 8. Ms. Gonzalez alleges that she and Mr. Vila signed an employment contract in April 2004, so as to allow her to obtain an A-3 diplomatic visa with which she could accompany defendants to the United States to continue her employment for them when Mr. Vila took up his post at the Argentine Embassy. See id. ¶¶ 7, 9. Ms. Gonzalez's complaint states that she did not receive a copy of this contract, but that "upon information and belief," the written terms of the contract included a provision that she be paid $6.72 per hour for the first forty hours she worked each week, overtime pay for any hours above that, and holiday and vacation time. See id. ¶¶ 10, 11.[3]

---

[2] While the undersigned cannot, of course, control or even predict how another judge might rule in the future, the undersigned recommends that the statute of limitations on plaintiff's claim be tolled until such time as the defendants are not immune from suit. See Knab v. Republic of Georgia, Civil Action No. 97-3118, 1998 WL 34067108, at *4 (D.D.C. May 29, 1998).

[3] Ms. Gonzalez also alleges that she requested a copy of the contract from Ms. Nielsen in early 2005, which Ms. Nielsen refused to give to her. See Compl. ¶ 29. In her

Ms. Gonzalez alleges that defendant Vila told her before her A-3 visa interview at the U.S. Embassy in Argentina that he intended to pay her only $500.00 per month, rather than the wages specified in the written contract. See Compl. ¶ 13. Ms. Gonzalez alleges that defendant Vila told her to inform the U.S. Embassy employees that she would be paid under the terms of the written contract, rather than the reduced wages he had explained to her verbally, and Ms. Gonzalez did so. See id. ¶¶ 13, 15. Ms. Gonzalez received an A-3 visa in April 2004. See id. ¶ 2. She arrived in Washington with the defendants and their child on April 29, 2004 and began working for them the next day. See id. ¶ 16.

Ms. Gonzalez alleges that she worked on average 77 hours per week for the defendants between April 30, 2004 and February 19, 2005, and was paid $500.00 per month, which the complaint states is equivalent to either $1.62 or $3.13 per hour, depending on which paragraph of the complaint one accepts. See Compl. ¶¶ 13, 17, 18.[4] She asserts that this wage is a violation of both federal and District of Columbia wage laws, as well as constituting a breach of contract and an unjust enrichment. See id. at 1-2.

Defendants have filed a motion to quash service of process and dismiss the complaint, asserting that each of them holds an A-1 diplomatic visa and that the government of Argentina has requested that they assert diplomatic immunity from suit under the Vienna Convention on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227 ( "VCDR" or "the Convention"). See Mot. at 1. Defendants' motion also relies upon a decision from the United

---

opposition brief, Ms. Gonzalez states that she was later able to obtain a copy from the Embassy of Argentina. See Opp. at 5 n.3.

[4] Ms. Gonzalez is not seeking wages for the period between December 16, 2004 and January 8, 2005, when she and the defendants were in Argentina. See Compl. ¶ 26.

States Court of Appeals for the Fourth Circuit, Tabion v. Mufti, 73 F.3d 525 (4th Cir. 1996).

The Court received a letter from the Embassy of Argentina that was filed in this case by order of the undersigned on October 13, 2006. The letter from the Embassy included with it a letter from Gladys Boluda, Assistant Chief of Protocol for the United States Department of State, dated September 25, 2006. The letter from Ms. Boluda certifies the status of Mr. Vila as a national of Argentina and a diplomatic agent at the Embassy of Argentina in the United States. She further certified that the Embassy of Argentina identified Ms. Nielsen as a national of Argentina and Mr. Vila's spouse residing in his household.

## II. DISCUSSION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1351, which states that district courts "have original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against . . . members of a mission or members of their families (as such terms are defined in section 2 of the Diplomatic Relations Act)." 28 U.S.C. § 1351; see also Logan v. Dupuis, 990 F. Supp. 26, 27 n.2 (D.D.C. 1997).

The Vienna Convention on Diplomatic Relations provides in relevant part that a "diplomatic agent shall . . . enjoy immunity from [the receiving state's] civil and administrative jurisdiction . . . ." VCDR, Article 31(1). There are three exceptions set forth in the Convention, including an exception "in the case of . . . (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." Id. The Convention also provides that the "members of the family of a diplomatic agent forming part of his household shall, if they are not nationals of the receiving State, enjoy the privileges

4

and immunities specified in Articles 29 to 36." VCDR, Article 37. Finally, the VCDR provides that a diplomatic agent "shall not in the receiving State practise for personal profit any professional or commercial activity." VCDR, Article 42.

In accordance with the treaty, 22 U.S.C. § 254d provides that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual . . . ." 22 U.S.C. § 254d. As the defendants have moved to dismiss on the grounds of diplomatic immunity, the only question before the Court is whether defendants are immune under the terms of the Vienna Convention, or whether, as plaintiff contends, they are excepted from immunity under Article 31(1)(c) thereof. If the Court concludes that defendants are immune, it must dismiss the action pursuant to 22 U.S.C. § 254d.

The Vienna Convention on Diplomatic Relations is a multilateral treaty. "Treaties are contracts between sovereigns, and as such, should be construed to give effect to the intent of the signatories." Tabion v. Mufti, 73 F.3d at 537 (citing United States v. Stuart, 489 U.S. 353, 365-66 (1989) and Nielsen v. Johnson, 279 U.S. 47, 51 (1929)). When construing a treaty, the Court should look at the treaty's language, considering the context in which the words were used. See Tabion v. Mufti, 73 F.3d at 537 (citing Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 534 (1991)). As Judge Oberdorfer has explained, a "treaty is to be interpreted 'in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in light of its object and purpose.'" Logan v. Dupuis, 990 F. Supp. at 29 (citing the Vienna Convention on the Law of Treaties, art. 31(1), May 23, 1969, 1155 U.N.T.S. 331). "Treaties generally are liberally

5

construed: courts 'may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties' to ascertain the meaning of a difficult or unclear passage." Tabion v. Mufti, 73 F.3d at 537 (quoting Eastern Airlines, Inc. v. Floyd, 499 U.S. at 535 and citing Nielsen v. Johnson, 279 U.S. at 51-52); see also Tachiona v. United States, 386 F.3d 205, 217 (2d Cir. 2004), cert. denied, 126 S.Ct. 2020 (2006).

   Plaintiff presents three primary arguments against dismissal of her complaint: (1) defendants did not present any evidence supporting their assertion of diplomatic immunity; (2) both the employment contract between plaintiff and defendant Vila and defendant Nielsen's pursuit of academic studies in the United States – facilitated by plaintiff's employment as a domestic worker – constitute commercial and/or professional activities outside of the diplomat's official functions and therefore fit within an exception to immunity under the VCDR; and (3) defendants defrauded both plaintiff and the United States government in securing plaintiff's entrance into the United States and they therefore should not be immune from suit. See Opp. at 2-3. *Amici Curiae* filed a brief in support of plaintiff's arguments, specifically with respect to her assertion that the employment relationship between the parties should constitute a "commercial activity" within the meaning of the Vienna Convention. See *Amici* Brief at 11-26.

   Plaintiff made her first argument – that defendants did not present any evidence supporting their assertion of diplomatic immunity – before the letter from the Embassy of Argentina arrived and was filed on the docket of the Court. That letter, and the letter from the United States Department of State included with it certifying the defendants' status as diplomatic agent and family member thereof, render plaintiff's first argument moot. The process by which the defendants in this case have documented their diplomatic status was appropriate. As the D.C.

6

Circuit has explained, "[i]t is enough that [the diplomat] has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been communicated to the court. The courts are disposed to accept as conclusive of the fact of the diplomatic status of an individual claiming an exemption, the views thereon of the political department of their government." Carrera v. Carrera, 174 F.2d 496, 497 (D.C. Cir. 1949) (internal quotation and citation omitted); see also Zdravkovich v. Consul General of Yugoslavia, No. 98-7034, 1998 WL 389086, *1 (D.C. Cir. 1998) (per curiam) ("The courts are required to accept the State Department's determination that a foreign official possesses diplomatic immunity from suit. Appellant's claims do not fall within any of the exceptions to diplomatic immunity.") (internal citations omitted); Jungquist v. Nahyan, 940 F. Supp. 312, 321-22 (D.D.C. 1996) *rev'd in part on other grounds*, 115 F.3d 1020 ("[T]he determination of a diplomat's status is made by the State Department, not the Court.").

With respect to plaintiff's second argument, there are few published decisions of United States courts interpreting the "commercial activity" exception found within Article 31(1)(c) of the Vienna Convention.[5] Judge Ellis in the Eastern District of Virginia was

---

[5] The Court rejects the suggestion of the plaintiff and *amici* that case law interpreting and applying the phrase "commercial activity" under the Foreign Sovereign Immunities Act should inform the interpretation of the commercial activity exception to diplomatic immunity under the VCDR, largely for the reasons carefully explained by the Fourth Circuit in Tabion. See Tabion v. Mufti, 73 F.3d at 539 n.7. In sum: the Vienna Convention is a multilateral treaty – a contract between many sovereign nations – rather than a domestic American statute; it was written well before the FSIA was enacted; and there is evidence that Congress specifically did not intend for the FSIA to change the meaning of existing international agreements. See id; accord Knab v. Republic of Georgia, 1998 WL 34067108, at *4, n.3 (The FSIA does not purport to modify or affect the protections afforded under the VCDR.).

In a Statement of Interest filed by the United States pursuant to 28 U.S.C. § 517, the United States Department of State expressed a similar position – it agrees that "the case law

faced with a case involving similar allegations and defenses in Tabion v. Mufti, 877 F. Supp. 285 (E.D.Va. 1995), aff'd 73 F.3d at 539.[6]  As Ms. Gonzalez and *amici* do in this case, the plaintiff in Tabion argued that her employment relationship with the defendants was itself a commercial activity with respect to which the defendants should not be diplomatically immune.  See id. at 287.  Both Judge Ellis and the Fourth Circuit concluded that this argument was incorrect.  The Fourth Circuit explained:

> When examined in context, the term "commercial activity" [as used in the Vienna Convention on Diplomatic Relations] does not have so broad a meaning as to include occasional service contracts as [plaintiff] contends, but rather relates only to trade or business activity engaged in for personal profit.  Accepting the broader meaning fails to take into account the treaty's background and negotiating history, as well as its subsequent interpretation.  It also ignores the relevance of the remainder of the phrase – "outside his official functions."

Tabion v. Mufti, 73 F.3d at 537.  The State Department filed a Statement of Interest in Tabion (as it has in this case), which concluded that "the term 'commercial activity' as used in the exception 'focuses on the pursuit of trade or business activity; it does not encompass contractual relationships for goods and services incidental to the daily life of the diplomat and his family in the receiving State.'" Tabion v. Mufti, 73 F.3d at 538 (quoting a Statement of Interest of the United States).

Similarly, the Statement of Interest filed by the United States in this case

---

interpreting the term 'commercial acitivity' under the FSIA should not be used to interpret the same term under the Diplomatic Relations Convention."  Statement of Interest at 24.  This Court also agrees, and therefore will not consider any cases under the FSIA in its analysis of this case.

[6]     The factual allegations in Tabion were even more troubling than in this case, including allegations that plaintiff was paid less than one dollar per hour and that her passport was confiscated by the defendants.  See Tabion v. Mufti, 877 F. Supp. at 286.

concluded that "[w]hen diplomats enter into contractual relationships for personal goods or services incidental to residing in the host country, including the employment of domestic workers, they are not engaging in 'commercial activity' as that term is used in the Diplomatic Relations Convention." Statement of Interest at 14. The Supreme Court has held that "although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." United States v. Stuart, 489 U.S. 353, 369 (1989) (citing Sumimoto Shoji America, Inc. v. Avagliano, 457 U.S. 176, 184-85 (1982) (internal quotations and citations omitted)). Accordingly, the Statement of Interest filed by the United States, while not dispositive, is entitled to great deference. See id.; see also Tachiona v. United States, 386 F.3d at 216; Tabion v. Mufti, 73 F.3d at 538. The Court finds no reason to disagree with the conclusion of the Department of State – and the Fourth Circuit – that a contract for domestic services such as the one at issue in this case is not itself a "commercial activity" within the meaning of Article 31(1)(c) of the Vienna Convention on Diplomatic Relations.[7]

Plaintiff also argues that because Ms. Nielsen was pursuing academic studies – a pursuit facilitated by Ms. Gonzalez's provision of domestic help – this case is "an action relating to any professional . . . activity exercised by the diplomatic agent in the receiving State outside his official functions" under Article 31(1)(c) of the VCDR. See Opp. at 8-11. This argument,

---

[7] *Amici* attempt to add a twist to the arguments that are rejected by the Department of State, the court in Tabion, and now this Court. *Amici* attempt to circumvent the logic applied by the court in Tabion by asserting that diplomats do, in fact, profit from arrangements for domestic services such as the one in this case, because they are underpaying for labor and thereby profiting. See *Amici* Brief at 13. The Court finds this argument unpersuasive. A contract for domestic services such as the one at issue here is not itself a "commercial activity."

while creative, also is without merit. Even if the Court were to conclude – which it does not – that the pursuit of academic studies is a professional activity under the Convention, plaintiff's argument would fail. To conclude that the pursuit of academic study by a diplomat's wife is "related to" the provision of domestic services within the meaning of the exception to immunity is to read the treaty too broadly. See Tachiona v. United States, 386 F.3d at 220 ("Related" means "connected by reason of an established or discoverable relation."). The Court cannot conclude that this lawsuit is "an action related to" a professional activity within the meaning of the Convention simply because having domestic services would be helpful while one is pursuing an L.L.M.

No doubt domestic services are helpful in pursuing many activities, but that does not lead to the result that plaintiff desires – a lack of diplomatic immunity – because there is no "connection by reason of an established relation" between the two activities. Nor does the Court believe that academic studies are a "professional activity." Academic studies are, by definition, *academic* – rather than related to a profession, commerce, trade, or other profitable activity. Once again, the Department of State agrees with the Court's analysis, concluding that the pursuit of academic studies is not a professional activity within the meaning of Article 31(1)(c) of the Convention. See Statement of Interest at 16.

Plaintiff's final argument is that "diplomatic immunity should not extend to those who, like defendants in this case, obtained entry into the United States based on misrepresentations and deceit." Opp. at 26. Plaintiff may be correct that it "should" not – but that is a policy argument more appropriately directed at either Congress or the Department of State, not at this Court. The Department of State certified the defendants' diplomatic status, and

it is not for this Court to revoke or question it, but rather only to determine if an exception to diplomatic immunity set forth in the Convention applies. As noted, "the courts are disposed to accept as conclusive of the fact of the diplomatic status of an individual claiming an exemption, the views thereon of the political department of their government." Carrera v. Carrera, 174 F.2d at 497 (internal quotation and citation omitted). Fraud is not an exception recognized within the Vienna Convention itself, so – in this forum at least – plaintiff's third argument must fail. See VCDR, Article 31(1).

In their brief, *amici* spend much time and effort outlining the horrors of slavery and trafficking in persons in the modern world, and they assert that abuse of domestic workers by diplomats in the United States is widespread. See *Amici* Brief at 2-11. As *amici* do, the Court sincerely hopes that such abuse is not widespread, and that it can be eradicated altogether. The Court also agrees that the policy of the United States is to eradicate such trafficking. See id. at 18-20. The Court mentions these points only to note what the allegations in this case are *not* – slavery, human trafficking, war crimes, torture, etc. Such violations of *jus cogens* are not at issue in this civil action and the Court is not opining thereon. See Aidi v. Yaron, 672 F. Supp. 516, 518 (D.D.C. 1987).

In upholding defendants' claim of diplomatic immunity from suit, the Court recognizes that it is leaving plaintiff without recourse – at least within the United States and at this time. Again, the Fourth Circuit eloquently described the phenomenon:

> Here, as in most cases invoking sovereign immunity, there may
> appear to be some unfairness to the person against whom the
> invocation occurs. But it must be remembered that the outcome
> merely reflects policy choices already made. Policymakers in
> Congress and the Executive Branch clearly have believed that

>   diplomatic immunity not only ensures the efficient functioning of
>   diplomatic missions in foreign states, but fosters goodwill and
>   enhances relations among nations.  Thus, they have determined that
>   apparent inequity to a private individual is outweighed by the great
>   injury to the public that would arise from permitting suit against
>   the entity or its agents calling for application of immunity.

Tabion v. Mufti, 73 F.3d at 539.  The conduct of foreign relations is not entrusted to the judiciary, and in the cases that come before it the Court may only apply the treaties (and related statutes) that the President has signed and that Congress has ratified.  And the law that binds this Court states that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . *shall be dismissed*."  22 U.S.C. § 254d (emphasis provided); but see supra at 2 n.2.  Accordingly, defendants' motion to quash service of process and dismiss the complaint will be granted.  This action will be dismissed without prejudice.

   An appropriate Order accompanying this Opinion will be issued this same day.

                 _____/s/_____
                  PAUL L. FRIEDMAN
                  United States District Judge

DATE:  March 29, 2007